PEABODY, RESPONDENT, *v.* NORTHERN PACIFIC RAIL-
WAY CO. ET AL., APPELLANTS.

(No. 6,177.)

(Submitted October 21, 1927. Decided November 14, 1927.)

[261 Pac. 261.]

*Personal Injuries—Railway Crossings—Motor Vehicles—Negli-
gence — Emergency Rule — Inapplicability — Evidence — In-
admissibility—Immaterial Variance—Excessive Verdicts.*

Personal Injuries—Railway Crossings—Motor Vehicles—Negligence—
Emergency Rule—Inapplicability.
   1.   Evidence in a personal injury action against a railway com-
pany, where the occupant of an automobile was struck by a de-
scending arm of a gate operated by an employee of defendant
from a signal-tower at a crossing, *held* not to have justified the
giving of an instruction declaring the rule that one who, in a
sudden emergency, acts according to his best judgment or who,
because of want of time in which to form a judgment, omits to
act in the most judicious manner as a result of which a person
is injured, is not chargeable with negligence, but his act or
omission will be deemed a mistake and not carelessness.

Same—Immaterial Variance—Rule.
   2.   Where an alleged variance between the allegations of the
complaint and proof is so slight that it could not have misled
defendant or prejudiced his defense, and it does not appear that
his counsel was surprised or did not have present witnesses whom
they could otherwise have had, it will be deemed immaterial.

Same—Immaterial Variance—Case at Bar.
   3.   Under the above rule (par. 2) *held* that where the complaint
in a personal injury action charged that plaintiff was injured by
the act of defendants in suddenly and without warning lowering
and dropping upon plaintiff a gate arm while the latter·was pass-
ing over a crossing in an automobile, while plaintiff's testimony
showed that instead of the gate being dropped upon plaintiff,
the driver saw it descending but was unable to stop the auto-
mobile, with the result that the end of the gate arm scraped by
the windshield and struck plaintiff, an instruction that the jury
should find for defendants because of a fatal variance was prop-
erly refused.·

Same—Emergency Rule—Evidence—Inadmissibility.
   4.   Where the emergency rule above referred to (par. 1) is inap-
plicable under the evidence, offers of proof tending to show that
defendant's employee in charge of the signal-tower from which

---

   2.   Reversal for technical violation of rule that allegations and
proof must agree, see note in **Ann. Cas.** 1913D, 68.   See, also, 21
**R. C. L.** 611.

[80 Mont. 492.]

crossing gates were operated had on other occasions operated them under like conditions existing at the time plaintiff was injured were properly refused.

Same—Verdict Held not Excessive.

5. An award of $3,000 to plaintiff (a woman seventy-six years of age) as damages for injuries consisting of a fracture of the outer plate of the skull, impairment of vision and causing traumatic neurosis permanent in character, *held* not so excessive as to warrant a holding that it was given under the influence of passion and prejudice on the part of the jury.

---

[1]   Negligence, 29 **Cyc.**, p. 434, n. 32.   Railroads, 33 **Cyc.**, p. 947, n. 88.

[2]   Appeal and Error, 4 **C. J.**, sec. 2921, p. 946, n. 14.   Pleading, 31 **Cyc.**, p. 702, n. 33, p. 703, n. 40.   Railroads, 33 **Cyc.**, p. 1066, n. 71, 72.

[3]   Trial, 38 **Cyc.**, p. 1566, n. 85.

[4]   Railroads, 33 **Cyc.**, p. 1075, n. 29.

[5]   Damages, 17 **C. J.**, sec. 408, p. 1091, n. 85.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

ACTION by Emma Peabody against the Northern Pacific Railway Company and another. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Gunn, Rasch, Hall & Gunn,* for Appellants, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

We contend that the defendants were entitled to have submitted to the jury an instruction to the effect that if they found that the watchman was confronted with a sudden emergency and believed there was danger of serious injury to persons approaching from the south, and acted upon such belief it was not negligence on his part to do what he did. Defendants' refused instructions numbers 2 and 3 presented this question and should have been given over the objections thereto interposed by plaintiff.

Without these instructions of the defendants they were totally deprived of all consideration by the jury of a rule

---

5.   What is excessive verdict for personal injuries not resulting in death, see notes in 16 **Ann. Cas.** 8; **Ann. Cas.** 1913A, 1361; **Ann. Cas.** 1915D, 488; **Ann. Cas.** 1916C, 916; **L. R. A.** 1915F, 30; 46 **A. L. R.** 1230. See, also, 8 **R. C. L.** 874. Excessiveness of verdict for loss of eye or impairment of vision, see note in 46 **A. L. R.** 1281.

of law applicable to a material defense and in effect were instructed, as a matter of law, that the watchman was negligent in lowering the gates as he did.

It should be here noted that there is no allegation of negligence on his part prior to the lowering of the gates after plaintiff had started over the tracks. (See *Floyd* v. *Philadelphia & R. R. Co.*, 162 Pa. 29, 29 Atl. 396; *Donahue* v. *Kelly*, 181 Pa. 93, 59 Am. St. Rep. 632, 37 Atl. 186; *Louisville & N. R. Co.* v. *Wright*, 193 Ky. 59, 235 S. W. 1; *Oklahoma Producing & Refining Corp.* v. *Freeman*, 88 Okl. 166, 212 Pac. 742; *Gumz* v. *C. M. & St. P. Ry. Co.*, 52 Wis. 672, 10 N. W. 11; *Marshall* v. *Olson*, 102 Or. 502, 202 Pac. 736; *Sharkey* v. *Shurman*, 170 Wis. 350, 174 N. W. 912; *Kelch* v. *National Contract Co.*, 178 Ky. 632, 199 S. W. 796; *Barnhart* v. *American Glycerine Co.*, 113 Kan. 136, 31 A. L. R. 721, 213 Pac. 663; *Hughes* v. *Oregon Improvement Co.*, 20 Wash. 294, 55 Pac. 119; *Stabenan* v. *Atlantic Ave. Ry. Co.*, 155 N. Y. 511, 50 N. E. 277; *Davis* v. *Powell*, 140 Va. 649, 125 S. E. 751; *Hartley* v. *Lasater*, 96 Wash. 407, 165 Pac. 106; 29 Cyc., pp. 434, 521; note, 37 L. R. A. (n. s.) 43.)

We submit that there is a fatal variance between the allegation in the complaint that the defendants dropped the gate on plaintiff and in the proof showing that the gate was lowered some six or ten feet in front of an automobile which then ran through the gate, causing her injury. (*Knuckey* v. *Butte Electric Ry. Co.*, 41 Mont. 314, 109 Pac. 979; *Higgins* v. *Mayor*, 3 Penne. (Del.) 356, 51 Atl. 1; *Brodsky* v. *Kronenberg*, 145 App. Div. 594, 130 N. Y. Supp. 251; *Bracey* v. *Northwestern Improvement Co.*, 41 Mont. 338, 109 Pac. 706.)

*Mr. Lester H. Loble* and *Mr. Hugh R. Adair*, for Respondent, submitted a brief; *Mr. Adair* argued the cause orally.

The rule that one may be excused from precipitous or unwise acts committed in view of impending peril applies only where the position of peril was created by the acts of the party to an action against whom it is invoked. (*Howard* v. *Worthington*, 50 Cal. App. 556, 195 Pac. 709.) In this case the alleged

"emergency" or "position of peril" was created by the defendants. To allow the one who creates a position of peril to defend upon the above grounds would be to permit him to take advantage of his own wrong. (*MacRae* v. *Erickson,* 1 Cal. App. 326, 82 Pac. 209; *Neff* v. *United Railroads,* 188 Cal. 722, 207 Pac. 243; *Dinnigan* v. *Peterson,* 3 Cal. App. 764, 87 Pac. 218.)

Appellants assert that it was error to exclude "evidence offered to show that automobiles often ran through these crossing gates without injury to the occupants thereof." The law is to the contrary. In 29 Cyc. 614, it is said: "Evidence of the absence of previous accidents or injury from the same cause is not admissible on the question of defendant's negligence." (See, also, *Denver City Tramway Co.* v. *Hills,* 50 Colo. 328, 36 L. R. A. (n. s.) 213, 116 Pac. 125; *Sellars* v. *Southern Pac. Co.,* 33 Cal. App. 701, 166 Pac. 599; *Wright* v. *Kansas City Terminal Ry. Co.,* 195 Mo. App. 480, 193 S. W. 963.)

In her complaint plaintiff alleged that defendants "lowered and dropped said south crossing gate upon the plaintiff." She further alleged that the said crossing gate "did then and there descend upon and strike the plaintiff." The evidence showed that the defendants lowered and dropped the said crossing gate upon the automobile in which plaintiff was riding; that the gates descended immediately in front of the windshield and that plaintiff was struck by the right-hand gate. Because the evidence showed that the gates were lowered and dropped upon the automobile in which plaintiff was riding instead of being lowered and dropped directly upon plaintiff, appellants assert there was a fatal variance.

In 2 Cal. Jur., page 1017, it is said: "A variance which could not have misled a defendant to his prejudice in maintaining his defense on the merits is immaterial and cannot operate to overthrow the judgment. Such a variance must be treated as immaterial  *  *  *  and will be disregarded on appeal." (See *Robinson* v. *Helena Light & Ry. Co.,* 38 Mont. 222, 99 Pac. 837; *Stevens* v. *Hines,* 63 Mont. 94, 206 Pac. 441; *Wilcox* v. *Newman,* 58 Mont. 54, 190 Pac. 138; *Matoole* v. *Sullivan,*

55 Mont. 363, 177 Pac. 254; *John* v. *Northern Pac. Ry. Co.*, 42 Mont. 18, 111 Pac. 632.)

Appellants made no objection to the evidence on the grounds of variance during the trial. No motion for nonsuit was made. They waited until all evidence was introduced and then attempted for the first time to urge a variance by asking for an instruction for a directed verdict upon this ground. This cannot be done. There can be no better evidence that a party has not been misled to his prejudice by a variance than is afforded by his failure to object to it. (*Aulback* v. *Dahler*, 4 Idaho, 654, 43 Pac. 322, 423; see, also, *Fitzgerald* v. *Southern Pacific Co.*, 36 Cal. App. 660, 173 Pac. 91.)

MR. JUSTICE STARK delivered the opinion of the court.

Plaintiff instituted this action to recover judgment for damages alleged to have been sustained by her on account of injuries received while she was passing over the crossing of the defendant company's tracks at Roberts Street in the city of Helena. Roberts Street runs north and south and crosses the railroad tracks, which are nine in number at this point, at right angles. To prevent travelers along this street from entering upon the crossing when trains or engines are moving over it, gates were maintained at each side. Each consisted of two arms which were operated by being lowered and raised simultaneously by an employee of the defendant company from his station in a signal-tower located on the south side of the tracks. At the time in question these gates were being operated by the defendant Siegel. The plaintiff, riding in an automobile driven by Carl A. Weiss, approached the crossing from the north side. At that time a train was passing, and the gates were down. After this train had cleared the crossing the gates were raised and the automobile proceeded on south. As it was about to pass under the gate on the south side of the tracks, the gates were again lowered, and the right arm of the south gate struck the plaintiff, causing the injuries complained of. At the trial of the action the jury returned a verdict in favor of the plaintiff, upon which judᵍment was duly rendered.

The defendants made a motion for a new trial, which was denied, and they have appealed from the judgment.

1. The first and second assignments of error call into question **[1]** the ruling of the court in sustaining the objections to defendants' offered instructions Nos. 2 and 3, which were to the effect that, if they found from the evidence that the defendant Siegel, at the time he lowered the gates, was confronted with a sudden emergency, and believed that there was danger that persons approaching the crossing from the south would be struck by a passing train or locomotive, then it was not negligence on his part to lower the gates as he did.

The rule as stated in the authorities generally is that: "One who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. Such * * * act or omission * * * may be called a mistake, but not carelessness." (*Floyd* v. *Philadelphia & Reading R. Co.*, 162 Pa. 29, 29 Atl. 396; *Donahue* v. *Kelly*, 181 Pa. 93, 59 Am. St. Rep. 632, 37 Atl. 186; *Louisville & N. R. Co.* v. *Wright*, 193 Ky. 59, 235 S. W. 1; *Gumz* v. *Chicago, St. P. & M. Ry. Co.*, 52 Wis. 672, 10 N. W. 11; 20 R. C. L., p. 29, sec. 22.)

In *Floyd* v. *Philadelphia & Reading R. Co.*, supra, it appeared that a train was approaching and had almost reached a public railway crossing, when a flagman there stationed observed a horse and buggy about to be driven into the path of the on-coming train. To prevent an immediately imminent collision the flagman swung a lantern in front of the horse, preventing it from going on the track in front of the train, but incidentally frightening it so that it ran away. Under these circumstances the court held "that the occasion was one of extreme urgency, that no reflection upon methods was safe or even eligible," and that the "act of the flagman was in no sense a negligent act but an imperative duty."

In *Donahue* v. *Kelly*, above, as stated in the syllabus "an employee in a restaurant picked up a gasoline lamp which had become improperly ignited, to carry it outside. While pro-

ceeding to the door, he was severely burned, and threw the lamp, causing it to explode. Held, that his employer was not liable, as for culpable negligence, to a third person injured by such explosion.''

In the case of *Louisville & N. R. Co.* v. *Wright,* supra, it appeared that the fireman on a locomotive became wedged between the engine and the tender as the locomotive approached a switch connection. This was the rear of two locomotives that were attached to the head of a train. The fireman screamed, and the engineer, without signaling the head engineer to stop the train, jumped off his seat box, and tried to extricate the fireman, but failed to do this, returned to his seat, and then signaled the other engineer to stop. It was urged that the engineer was negligent in not signaling to stop the train before trying to extricate the fireman. It was held that the engineer's act was not negligent under these circumstances, and that a directed verdict should have been granted to the defendant.

These cases fairly illustrate the kind of circumstances under which the courts have applied the above rule.

If the evidence in this case were sufficient to warrant a reasonable conclusion that at the time in question the defendant Siegel was confronted with a ''sudden emergency,'' or that ''there was want of time in which to form a judgment,'' under the circumstances, as they appeared to him, the court should have given the offered instructions.

The defendant Siegel testified that, at the time of the accident he was in the watchman's tower, from which he was operating the gates; that his elevation was sufficient for him to see over the trains and engines on the tracks; that, when the automobile in which the plaintiff was riding approached the crossing from the north, a stock train was passing, and the gates were down; that, after this train had cleared the crossing, he raised the gates and the automobile proceeded across the tracks; that at this time a switch engine was standing on the fourth or fifth track from the south side and about 20 feet east of the crossing, and just as the automobile in which the plaintiff was riding passed off the last track to the south the switch engine

started to move west, and at the same time he observed another automobile, "a common small car, touring car," approaching the crossing from the south. This automobile was then at about the middle of Railroad Avenue, which is south of and parallel to the railroad tracks.

The evidence showed that Railroad Avenue is about 80 feet wide; that the distance from the north line of this avenue to the south gate is 38 feet, and from the south gate to the south track is 52 feet 9 inches; and Siegel testified that the distance from the south track to the place where the switch engine stood was about 75 to 100 feet. From this it appears that, when Siegel first saw the automobile approaching from the south, it was more than 205 feet away from the switch engine, and Siegel said this automobile was not moving fast— 10 miles per hour.

With this condition existing—that is, the car in which plaintiff was riding just passing off the south track, the switch engine starting to move over the crossing, and the automobile coming from the south at a distance of over 205 feet from the switch engine—Siegel started to lower the gates, and allowed them to come into a position where they came in contact with the automobile in which the plaintiff was riding. His explanation was that he feared that, if the automobile coming from the south kept on coming, it would be hit by the switch engine. Further testifying as to his reasons for lowering the gates at that time, he said: "I wanted Weiss to get across, and wanted to keep the other fellow out." Following this statement, he added: "When I lowered the gates, it looked like I was going to hit Weiss."

Clearly, one who observed all the minute details of the situation, the exact location and kind of the automobile approaching from the south, the rate of speed at which it was traveling, and concluded that it was necessary to lower the gates when the automobile was 205 feet from the point where it might come into collision with the switch engine, which had started to move over the crossing to the west, and that, when he did so, "it looked like" he was going to hit the automobile coming from

the north, was not acting under the impulse of a sudden emergency which would relieve him from a charge of negligence in doing as he did, under the rule laid down in the authorities above quoted from. The force of this conclusion is not lessened by his other statements that "it looked like trouble," and that he found himself "in a kind of a hole," for his entire testimony shows that he fully comprehended the fact that when he lowered the gates they might hit the automobile in which the plaintiff was riding.

The court did not err in refusing to give offered instructions Nos. 2 and 3.

2. The defendants' third specification of error is predicated [2, 3] upon the refusal of the court to give their offered instruction No. 6, which was a peremptory direction to the jury to return a verdict in favor of the defendants, because there was a fatal variance between the allegations of the complaint and the evidence introduced to sustain the same.

The negligent act alleged in the complaint is that the defendants "suddenly and without warning lowered and dropped said south crossing gate upon the plaintiff, and said south crossing gate did then and there descend upon and strike the plaintiff."

The witness Weiss, who was driving the automobile in which plaintiff was riding at the time she received her injuries, testified that he was driving at the rate of about 15 miles per hour; that after he had gotten across the last track, and was about at the south gate, he observed the gate coming down right in front of the windshield; that when he first saw the gate, and before it had gotten down to the level, the arm was about 2 feet higher than the automobile, and about 6 to 10 feet in front of him; that he tried to stop the automobile to avoid contact with the gate arm, but was unable to do so; and that the end of the arm scraped by the side of the windshield and struck the plaintiff.

The testimony of Elsie Lohman, who was also riding in the automobile, was substantially the same as that of the witness

Weiss, while the plaintiff's testimony was: "The gate come down and struck me."

Section 9183, Revised Codes 1921, provides: "No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." An analysis of the foregoing testimony will demonstrate that the variance between the allegations of the complaint and the proof offered to them, if there was in fact any variance, was so slight that it could not have misled the defendants in maintaining their defense.

The automobile in which the plaintiff was riding was traveling at the rate of 15 miles per hour, or about 22½ feet per second. When it was from 6 to 10 feet from the south gate, the driver observed the descending arm of the gate which struck the plaintiff at an elevation of about 2 feet higher than the automobile. The automobile continued to move ahead, and the gate arm continued to descend. While the automobile covered the distance of 6 to 10 feet straight ahead, the arm descended from its elevation of 2 feet higher than the automobile to a position where, in the course of its descent, it came in contact with the windshield of the advancing automobile, and as a result of that contact glanced and struck the plaintiff, causing the injuries complained of. There is nothing in the testimony tending to indicate that the gate arm did not continue to descend in the brief interval which elapsed between the time it came in contact with the windshield and the time when it came in contact with the plaintiff's head; so a reasonable deduction might be made that it was actually descending when it struck the plaintiff, and thereby bring the proof within the letter of the allegations of the complaint.

But, if it should be considered that there was a variance between the allegations and the proof, there is no basis for a conclusion that the defendants were misled thereby, or that they were prejudiced in their defense to the action. It does not appear that counsel were surprised, or that they did not have present any witness whom they could otherwise have had.

Under the provisions of section 9183, supra, and the decisions of this court, there was no error in the refusal of the court to give the proposed instruction. (*Robinson* v. *Helena Light & Ry. Co.*, 38 Mont. 222, 99 Pac. 837; *Stevens* v. *Hines*, 63 Mont. 94, 206 Pac. 441.)

3. When the defendant company's claim agent was on the **[4]** stand as a witness for the defendants, he was asked this question: "Q. And what have you to say as to whether or not it is a frequent occurrence for people to go through the gates with automobiles?" An objection to this question on the ground that it was immaterial was sustained, whereupon the defendants made an offer to prove by the witness "that on numerous occasions prior to the date of the accident automobiles had driven through these gates on Roberts Street crossing without any injury to the occupants of the car going through the gate." Under similar circumstances, while another witness was on the stand, who was a watchman at the street crossing in question, the defendants made an offer to prove that during the time he had been watchman "there have been numerous occasions when it became necessary for him to lower the gates after automobiles had started across and before they had had time to get beyond the opposite gate in order to protect other automobiles from being struck by locomotives or trains approaching the crossing."

The rulings of the court in sustaining objections to these offers of proof are the bases of defendants' fourth specifications of error. Counsel for defendants urge in their brief that the offered evidence was "material in determining the reasonableness of the judgment and acts of the watchman when confronted with the emergency." Thus the offers present only another phase of the "sudden emergency" rule which was considered in connection with specifications 1 and 2 above. Having determined that the circumstances disclosed in the record were not sufficient to warrant an application of that rule to this case, it follows that there was no error in sustaining the objections to the offers of evidence in its support.

4. The jury awarded plaintiff damages in the sum of $3,000, [5] and she was given judgment therefor. One of the grounds of defendants' motion for a new trial was that this amount of damages was excessive, and appeared to have been given under the influence of passion or prejudice. The fifth specification made by defendants as ground for reversal is that the court erred in overruling their motion for a new trial.

The testimony introduced on the part of the plaintiff tended to show that the right arm of the crossing gate struck her above the right eye, and cut a gash about an inch and a half in length, and also caused a fracture of the outer plate of the skull at the point of contact; that as a result of these injuries she suffered great pain; that her vision was not as good after the accident as it was before; that she was under the care of physicians for about six weeks; and that she was suffering from traumatic neurosis, which was permanent in character. The defendants introduced testimony tending to show that the plaintiff's injuries were not so serious as disclosed by her testimony; that there was no fracture of the skull; that her vision was as good after the accident as before; and that her nervous condition was only temporary. The jury had the advantage of observing plaintiff's condition several months after the accident. They heard her account of the injuries which she sustained, and listened to the testimony given by the physicians as to the extent thereof. If they believed the statements of the plaintiff and her witnesses, as they apparently did, we cannot say that their award of damages was so excessive as to warrant us in holding that it was given under the influence of passion or prejudice, and therefore the court did not err in overruling the motion for a new trial, based on that ground.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Matthews and Galen concur.