No. 13572

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

JOSEPHINE KUDRNA et al.,

                Plaintiffs and Appellants,

-vs-

COMET CORPORATION et al.,

                Defendants and Respondents.

---

Appeal from:  District Court of the Seventh Judicial District,
              Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

    For Appellants:

        Gene Huntley argued, Baker, Montana
        Maurice R. Hunke, Dickinson, North Dakota

    For Respondents:

        Crowley, Haughey, Hanson, Gallagher & Toole,
         Billings, Montana
        Bruce Toole argued, Billings, Montana
        Anderson, Symmes, Forbes, Peete & Brown, Billings,
         Montana
        Weymouth Symmes argued, Billings, Montana

---

                    Submitted:  June 9, 1977

                         Decided: NOV 2 8 1977

Filed: NOV

*Thomas J. Kearney*
_____
Thomas J. Kearney
            Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

This is an appeal from a judgment in favor of defendants in a survivorship and wrongful death action entered on a jury verdict in the District Court, Dawson County. Plaintiff further appeals from an order denying plaintiff's motion for a directed verdict, and from an order denying motion for judgment notwithstanding the verdict or in the alternative a new trial.

Gilbert J. Kudrna was killed while riding as a rear seat passenger in a 1975 Dodge van owned by the McQuade Distributing Co., Inc., of Bismarck, North Dakota, and driven at the time of the collision by Gerard McQuade. McQuade was also killed. Two other passengers riding in the McQuade van were not injured. The collision was with a semi-truck and trailer leased by the Comet Corp. Gilbert Kudrna's widow, Josephine Kudrna, brought a survivorship action on behalf of her husband's estate and a wrongful death action on behalf of herself and four children.

The events leading to the collision were:

On February 7, 1975, Interstate 90 was closed between Laurel, Montana on the east and Livingston, Montana on the west because of winter storm conditions.

On the following morning the highway was reopened for traffic in both directions. It was clear and sunny but very cold; the temperature was approximately five degrees below zero Fahrenheit. The surface of the highway in the general area where the collision occurred was snow packed and slippery; the pavement was covered and the center line obscured. The area where the collision occurred is approximately 6.5 miles west of Big Timber, Montana, on U.S. Highway 10, which is, at this location, a two lane undivided asphalt paved highway that is a interconnecting portion of Interstate 90.

At about 9 o'clock a.m. a semi-truck leased and operated by

the defendant Mid-West Coast Company, driven by defendant James Kennely with defendant Richard Hendrick as codriver, left Livingston, Montana proceeding in an easterly direction on Interstate 90. It was followed a short time later by a semi-truck leased and operated by the defendant Comet Corp., driven by defendant Robert D. Hamblen, also traveling east on Interstate 90.

Approximately 6.5 miles west of Big Timber, the first truck (Mid-West Coast) slowed to a stop in its eastbound lane of traffic. Its brakes had "frozen" and its driver was unable to release them. Because of snow kicked up at the rear of the vehicle as it traveled down the highway, the rear brake and clearance lights of the Mid-West Coast truck were completely covered by the time the truck began to slow.

As the second truck (Comet) approached, at a speed of between 40 and 50 miles per hour, its driver could see the Mid-West Coast truck from a distance of approximately 1700 feet. At some point between 100 and 500 feet behind Mid-West Coast's truck, the Comet driver realized Mid-West was not moving and that his truck could not be stopped in the distance separating them. Deciding to pass, rather than either going into the ditch or running into the rear of Mid-West Coast's trailer, Comet's driver turned into the westbound lane as he pulled out to get around the stationary vehicle. As he began his passing maneuver, Comet's driver looked up the westbound lane for oncoming traffic and saw the McQuade van approaching at a distance he estimated to be three quarters of a mile.

Comet's semi-truck passed the Mid-West Coast truck and was completing the motion of returning to its proper lane, when the left front side of the McQuade van collided with the left side of Comet's trailer at its rearmost axle, near the back end of the trailer.

The exact point of impact on the highway could not be determined because of the snow cover on the surface of the road, but the

highway patrol investigation found the impact to be "near" the center line of the highway.

The driver of the McQuade van and Gilbert Kudrna were killed as a result of the collision. Two other van passengers were not injured. Neither the driver nor the codriver of the Comet semi-truck was hurt. The trailer was damaged, its rear axle assembly torn loose by the impact of the collision.

On July 8, 1975, the estate, widow and children of Gilbert J. Kudrna brought suit against Comet Corp. and its driver; Mid-West Coast Company and its two drivers; and McQuade Distributing Co., Inc., alleging that the death of Kudrna had been proximately caused by the negligence of the defendants.

Trial of the cause began on the June 7, 1976. Plaintiffs and defendant McQuade Distributing Co., Inc., settled upon a covenant not to sue and the action against McQuade was ordered dismissed on June 8, 1976. On June 11, the jury found in favor of defendants. Judgment was entered on the verdict. Following the District Court's denial of plaintiffs' motion for judgment notwithstanding the verdict or alternatively, for a new trial, plaintiffs appealed.

The issues raised for review are:

(1) Whether the District Court's grant to defendants Comet Corp. and Mid-West Coast Company of a total of eight peremptory challenges constitutes reversible error? Defendants contend they had interests and defenses antagonistic in fact and thus were entitled to four peremptory challenges each.

(2) Whether the District Court's refusal to admit an allegedly res gestae statement offered by plaintiffs is reversible error?

(3) Whether the District Court should have directed a verdict of liability against Comet Corp., or should have granted plaintiffs' motion for judgment notwithstanding the verdict or for a new trial? Comet Corp. contends the issues of sudden emergency and proximate

-4-

cause entitled the case to go to the jury.

(4) Whether the District Court should have directed a verdict against Mid-West Coast Company or should have granted plaintiffs' motion for judgment notwithstanding the verdict or for a new trial as against Mid-West Coast? Mid-West Coast contends that, even assuming negligence for statutory safety regulations, the issue of proximate cause was a jury question.

Issue (1). Montana's jury challenge statute, section 93-5010, R.C.M. 1947, provides in part:

> " * * * Challenges to individual jurors are for cause or peremptory. Each party is entitled to four peremptory challenges * * *."

Plaintiffs rely on Mullery v. Great Northern Ry. Co., 50 Mont. 408, 148 P. 323 (1915), and cases following Mullery, where this Court allowed a total of four peremptory jury challenges to multiple defendants. Plaintiffs contend both defendants in the present action together constitute a "party" and should have been allowed no more than four peremptory challenges between them.

In a recent decision, Leary v. Kelly Pipe Co., 169 Mont. 511, 549 P.2d 813, 816, 33 St.Rep. 413, 416 (1976), this Court stated:

> " * * * Mullery stands for the proposition that under our jury challenge statute * * * the words 'each party' in reference to the permitted four peremptory challenges means 'each side' unless the positions of the codefendants are hostile to each other. The opinion suggests that hostility between nominal defendants may be shown 'by pleading, representation, or evidence.'"

Leary expressly overruled an earlier decision, Ferron v. Intermountain Trans. Co., 115 Mont. 388, 143 P.2d 893 (1943), to the extent that Ferron may be interpreted as requiring a collective total of four peremptory challenges irrespective of the number making up either parties plaintiff or parties defendant.

In Annotation - Jury: NUMBER OF PEREMPTORY CHALLENGES ALLOWABLE IN CIVIL CASE WHERE THERE ARE MORE THAN TWO PARTIES INVOLVED, 32 ALR3d 747, 761, it is stated:

"In the absence of a statutory provision expressly
requiring parties to join in peremptory challenges,
it has been held or recognized that where it is
determined that the interests of multiple parties
are diverse, or their respective defenses are dif-
ferent or hostile, each of the multiple parties
is entitled to the full number of peremptory chal-
lenges allowed by law to a 'party'."

From the earliest stages of this action, Comet Corp. and
Mid-West Coast Company shared neither an identity of interest nor a
common defense. Each was charged with a separate act of negligence
alleged to have proximately caused the collision, and each presented
a separate defense. In their respective answers, and in the pretrial
order, Comet and Mid-West each maintained the other's negligence
caused the collision. During trial, each defendant's case tended to
place responsibility on the other.

These defendants had interests and defenses antagonistic in
fact. The District Court recognized this hostility and properly
allowed each defendant four peremptory challenges.

Issue (2). This issue questions the exclusion of a statement
made between two and ten minutes before the collision by Hector
Rogers, who was eastbound on Interstate 90 when he was passed by
Comet's semi-truck. Immediately after he was passed, Rogers exclaimed
to passengers in his vehicle, with respect to the Comet vehicle,
"you wait and see; just a few miles down the road he'll either be
in the ditch or have killed someone." This statement was ruled
inadmissible by the District Court. Plaintiffs contend it tends
to show that Comet's truck was traveling too fast at the time of the
collision, and it should have been admitted as within the res gestae
exception to otherwise objectionable testimony.

Section 93-401-7, R.C.M. 1947, states:

"Where, also, the declaration, act, or ommission
forms part of a transaction, which is itself the
fact in dispute, or evidence of that fact, such
declaration, act, or ommission is evidence, as
part of that transaction."

This Court has held on several occasions that statements made from one to ten minutes after an accident may be admissible as part of the res gestae. In Blevins v. Weaver Const. Co., 150 Mont. 158, 164, 432 P.2d 378 (1967), this Court stated:

> " * * * Declarations relative to a transaction * * * must be deemed competent when they are so connected with the main transaction as to form a part of it. Callahan v. Chicago, etc., R. Co., 47 Mont. 401, 133 P. 687 [1913]; * * * Tanner v. Smith, 97 Mont. 229, 33 P.2d 547 [1934]".

Plaintiffs and Comet Corp. are in conflict with respect to whether Rogers' statement is sufficiently "connected with" the transaction involved in the present action to be within the res gestae exception. The District Court granted a motion in limine to prevent any reference to the statement during the trial.

In Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254, 267, 29 P.2d 1046 (1934), this Court stated:

> " * * * Whenever a question of fact arises upon conflicting evidence as to whether declarations are a part of the res gestae or depends upon contradictory inferences, either of which may fairly be drawn from such evidence, the solution of the question of admissibility of the evidence must in every case be left largely to the sound legal discretion of the trial court, subject to review only in the case of manifest abuse."

While the collision occurred on a two lane portion of highway, the Rogers vehicle was passed by the Comet truck as the two vehicles were traveling on four lane Interstate 90. Rogers testified the statement was made at a point two miles from the scene of the collision. However, testimony of the investigating highway patrolman, indicated the collision occurred at least 6.5 miles east of the termination of the four lane portion of highway. Rogers would have been passed at least that far from the scene of the collision between the McQuade van and the Comet truck, on a portion of highway where driving conditions were different from those prevailing in the area of the collision. We cannot say the discretion of the District Court was abused; the testimony was properly excluded.

-7-

Issue (3). Plaintiffs question whether the evidence shows Comet Corp. and its driver Robert D. Hamblen liable as a matter of law. Plaintiffs contend Gilbert Kudrna's injuries and death were proximately caused by these defendants' failure to observe highway traffic regulations, and therefore, the District Court should have directed verdicts of liability against them.

Plaintiffs rely on a series of decisions where this Court held the following driver in rear end collision cases negligent as a matter of law for following too closely, in violation of section 32-2160(a), R.C.M. 1947, which provides:

> "(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

Plaintiffs contend Comet Corp. would have been negligent per se had it collided with the Mid-West Coast truck, and argue that Comet should not escape responsibility for violating the duty imposed by this statute merely because it moved over into the oncoming lane rather than striking the Mid-West Coast truck.

Plaintiffs also contend that when the Comet truck driver pulled over into the opposing lane of traffic without looking for oncoming traffic and assuring himself he could pass in safety, he violated section 32-2155, R.C.M. 1947. Comet Corp. contends any statutory violations were excused by a sudden emergency created by the immobilized Mid-West Coast truck, and, in any event, the proximate cause of Kudrna's death was not due to the negligence of the driver of the Comet truck. Comet contends the sole proximate cause of Kudrna's death was the negligence of the immobilized Mid-West Coast truck.

Cases cited by plaintiffs involve various situations where liability was ultimately imposed as a matter of law or where statutory violations amounted to contributory negligence as a matter of law.

However, none involve a consideration of the sudden emergency rule asserted in behalf of defendant Comet.

In Custer Broadcasting Corp. v. Brewer, 163 Mont. 519, 522, 518 P.2d 257 (1974), this Court held a driver who collided with the vehicle ahead negligent as a matter of law for following too closely. The defendant testified that as he was driving on the highway between Miles City and Billings, Montana, snow kicked up by other vehicles obscured his vision and he did not see plaintiffs' vehicle until the impact. There, as in the present case, the jury returned a verdict for the defendant. This Court reversed, and held that a directed verdict should have been granted in favor of the plaintiffs.

This Court in Farris and Senecal v. Clark, 158 Mont. 33, 37, 487 P.2d 1307 (1971) held the District Court properly granted the plaintiffs' motion for summary judgment on the issue of liability against the defendant, who collided with a vehicle he was attempting to pass. Defendant was held liable as a matter of law for following too closely.

In Rader v. Nicholls, 140 Mont. 459, 462, 373 P.2d 312 (1962), this Court affirmed the District Court's grant of the defendants' motion for nonsuit, holding that plaintiff's conduct in pulling out to pass another vehicle within 100 feet of an intersection established contributory negligence as a matter of law. The controlling statute, section 32-2156, R.C.M. 1947, prohibits driving on the left side of the highway when approaching within 100 feet of an intersection. There, we stated:

> " * * * we have long been committed to the doc-
> trine that the violation of a statute enacted
> for the safety of the public is negligence per
> se * * *." 140 Mont. 462.

In Hurly v. Star Transfer Co., 141 Mont. 176, 182, 376 P.2d 504 (1962), the driver of a semi-truck backed his rig onto the high-way so that a portion of the trailer extended into the oncoming lane where it was struck by a vehicle driven by plaintiff's decedent.

-9-

The trial court granted a directed verdict on liability for defendant's failure to keep its vehicle in its proper lane. This Court affirmed stating:

> "Since * * * defendant's driver was negligent as a matter of law, the case, as to those questions, presented only a question of law. When a case presents only a question of law a directed verdict is proper. Section 93-5205, R.C.M. 1947; Richardson v. Crone, 127 Mont. 200, 258 P.2d 970." 141 Mont. 182, 183.

While Comet Corp. does not argue with these cited cases, it contends they do not apply here because Comet truck driver's conduct was justified by a sudden emergency and, in any event, the jury was entitled to find that any statutory violations were not the proximate cause of Kudrna's death. To constitute negligence per se, a statutory violation must also be the proximate cause of the injuries sustained. However, we do not agree that the driver's conduct was justified by a sudden emergency.

The evidence in this case shows that Comet's driver noticed the Mid-West Coast truck ahead of him near the the collision scene, from a distance of approximately 1700 feet. It was not until Comet was within four to five hundred feet of the Mid-West Coast truck, and closing the gap at a speed of forty to forty-five miles per hour, that Hamblen realized the truck ahead was stopped or moving only very slowly. He testified as to what occurred at that time:

> "Q. Do you recall seeing anything at all about the roadway ahead of [the Mid-West Coast truck] east and the half or three quarters of a mile east to the Mid-West Coast truck? A. No, sir.
>
> "Q. Do you think that you saw just a clear roadway then? A. I wasn't looking at the roadway, I mean as far as to see what was in it or if it was clear or not.
>
> "Q. What were you looking at? A. At the truck in front of me.
>
> " * * *
>
> "Q. Now, what did you do from that point when you were four to five hundred feet behind the Mid-

West Coast truck and realized that it was
stopped? What did you do next? A. When I
realized that it was stopped you have to make
a decision whether to ditch it or --

"Q. Decision about what? A. A decision; I
first of all, I tapped my brakes and no way
could I stop without colliding with the back
end.

"Q. Why not? A. I was too close at that point."

It is clear the Comet truck driver paid no attention to the stalled Mid-West Coast truck until he was so close he could not stop without rear-ending it. It was then he made his choice to pull out into the opposite lane of traffic and attempt to pass the Mid-West Coast truck. Comet does not argue that it did not follow the Mid-West Coast truck too closely, but rather, that it should not be held negligent for following too closely because the unanticipated stop of the Mid-West Coast truck created a condition of sudden emergency. However, we hold the doctrine of sudden emergency does not apply in this situation.

This Court has recognized the doctrine of sudden emergency, but a party asserting sudden emergency cannot obtain the benefit of that rule where the emergency itself has been created by the actor's own negligent or other tortious conduct. See: Erickson v. Perrett, 169 Mont. 167, 545 P.2d 1074, 33 St.Rep. 109 (1976); 2 Restatement of Torts 2d ¶296, Comment d; Peabody v. Northern Pacific Railway Co., 80 Mont. 492, 497, 261 P. 261 (1927); Marsh v. Ayers, 80 Mont. 401, 260 P. 702 (1927); Maynard v. City of Helena, 117 Mont. 402, 160 P.2d 484 (1945). In the present case, the Comet truck driver created his own emergency.

Although the stalled Mid-West Coast truck did present an obstacle to the Comet truck's progress, it did not suddenly appear in front of the Comet truck. The situation confronting the Comet truck driver was "sudden" only with respect to his realization that the Mid-West Coast truck was not moving and that he was then too

close behind it to avoid a collision, if he remained in the eastbound lane.

Comet argues that its driver's failure to determine whether the Mid-West Coast truck was stopped or moving until a few hundred feet behind it, was the fault of Mid-West Coast. We disagree. The fact that Mid-West Coast's rear lights were not visible does not excuse the Comet truck driver's failure to follow the vehicle ahead at a safe distance. Sufficient distance separated the two trucks when Comet's driver first noted the Mid-West Coast truck near the collision scene on the highway ahead to enable him to approach safely. It was a clear and sunny day. Surely a motorist has a duty to see that which is in plain sight and he is presumed to see that which he could see by looking. Marsh v. Ayers, supra; Boepple v. Mohalt, 101 Mont. 417, 54 P.2d 857 (1936); Nissen v. Johnson, 135 Mont. 329, 339 P.2d 651 (1959). At most, any negligence of Mid-West Coast would have been a concurring proximate cause.

In Transport Indemnity Company v. Page, Okl. 1963, 406 P.2d 980 the court ruled in a similar case that sudden emergency did not apply. In the Oklahoma case the first in a string of three eastbound trucks stopped at the entrance of a narrow bridge to allow the oncoming plaintiff sufficient clearance to pass through. The second truck was able to stop behind the first, but the third could not; he attempted to pass and collided with the plaintiff's vehicle. The court rejected the contention of the passing truck that its maneuver was excused because of the sudden emergency caused by the stopping of the preceding trucks, stating:

> " * * * truck #3, by virtue of its own acts, i.e.,
> following too closely, failing to maintain a
> proper lookout and failing to maintain a proper
> speed * * * had placed himself in a position
> where he could not stop within the assured clear
> distance ahead." 406 P.2d 983.

The same can be said of the Comet truck driver's conduct in the present case.

Also, in a similar case to the present case, Rodriguez v. Savage Trans. Co., 77 C.A.2d 162, 175 P.2d 37 (1946), a string of traffic had to slow down; the third truck in the string did not signal to slow down; and, the fourth truck, not having time to slow down without rear-ending the third truck, pulled out into the opposite lane of traffic and struck the plaintiff who was coming from the other direction. The case was tried to the court and it found the third and fourth trucks were concurrently negligent in causing plaintiff's injuries. The third truck was negligent in not signalling to slow down and the fourth truck was negligent in following too close and in passing the third truck when it was not safe to do so. On appeal the fourth truck argued that the collision was excused by the unanticipated slowing down of the truck immediately ahead. In affirming judgment for plaintiff, the court stated:

> " * * * these defendants assume that [the driver of the following truck] was proceeding in a reasonable manner just prior to the accident. Based on this erroneous premise, they then argue that [the driver] was faced with a sudden peril and that his course of conduct was reasonable and prudent under the circumstances." 175 P.2d 41.

Here, Comet also argues from an erroneous premise that it was proceeding in a reasonable manner just prior to the accident. The facts are to the contrary.

While we do not reject the concept of sudden emergency, we emphasize that it has limited application in the law of negligence, and trial courts should be very cautious in instructing the jury on sudden emergency. In Finley v. Wiley, 103 N.J. Super. 95, 246 A.2d 715 (1968), the court criticized the sudden emergency rule:

> "Further we entertain grave doubt whether a sudden emergency charge should ever be given in an ordinary automobile accident case. There is a modern view that it is argumentative, unnecessary, and confusing, and should be eliminated. * * *
>
> " * * * defendant was faced with no more than an everyday traffic problem for which he should have been prepared. The ordinary rules of negligence were applicable and afforded a sufficient gauge by which to appraise his conduct." (Emphasis added.)

-13-

Further, this Court in Erickson v. Perrett, 169 Mont. 167, 545 P.2d 1074, 33 St.Rep. 109 (1976) cited Prosser on Torts, 4th ed., p. 170, with approval as to the limited application of the rule:

> "A further qualification [to the sudden emergency rule] which must be made is that some 'emergencies' must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise. Thus under present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles in the highway * * *." (Bracketed material added.)

Clearly, the trial court was in error to instruct the jury on sudden emergency. As we discuss hereinafter, this instruction was ultimately prejudicial to Comet Corp. as well as to plaintiffs.

Plaintiffs further contend that in addition to following too closely, the Comet truck failed to pass in safety, in violation of section 32-2155, R.C.M. 1947, which provides in pertinent part:

> "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. * * *".

Comet Corp. argues its truck driver did not violate section 32-2155, and further, that any statutory violation of the truck driver is also excused by the doctrine of sudden emergency.

Testimony previously quoted, indicated the Comet truck driver did not look for approaching traffic as he drew near to the Mid-West Coast truck. At a point approximately four hundred feet behind the Mid-West Coast truck, he decided to pass, having determined his truck could not be stopped in the distance remaining between them. Comet's truck driver testified as to what occurred from the point he made his decision to pass:

"Q. When you made that decision what did you do? Did you do anything to implement the decision that you made? A. I started turning out into the eastbound or -- correction, westbound lane.

"Q. First you started turning out into the westbound lane, is that correct? A. Yes.

" * * *

"Q. And that means that you were crossing or had crossed the center line; is that also correct? A. Well, I started to at that point I started to cross the center line; yes, sir.

"Q. How much of your rig had already crossed the center line at that point? A. I have no way of -- I mean --

"Q. But you definitely were partially into the westbound lane. Is that a fair statement? A. Yes, sir.

"Q. What did you do next at that point? A. Well, I looked up the westbound lane to see if there was oncoming traffic.

"Q. Was that the first time you looked for oncoming traffic? A. Yes, sir.

"Q. You didn't look for oncoming traffic before you made your decision to pass? A. Well, at the same time you're pulling out you're looking ahead.

"Q. But still you have just stated and you said two or three times you first made your decision to pass and then you pulled out into the westbound lane and then you looked for westbound traffic. A. This all happened in one motion."

Comet Corp. argues that this "one motion" of its driver was not in violation of section 32-2155, since the driver thought he had ample distance between his truck and the McQuade van which he first noticed after he pulled out and was committed to passing the Mid-West Coast truck. Comet Corp. seeks to excuse the fact its truck driver did not determine whether the oncoming lane was clear before his passing maneuver began on the ground that he was confronted with the sudden emergency of the Mid-West Coast truck stopped on the highway ahead of him. We have heretofore disposed of the sudden emergency argument and also reject it here, for the same reasons. The driver's negligence created his own emergency.

-15-

Comet Corp. is not relieved of responsibility to pass in safety. In McDonough v. Smith, 86 Mont. 545, 550, 551, 284 P. 542 (1930), this Court stated:

> "The person passing is negligent if he so care-
> lessly directs or manages his automobile that a
> collision results, or if he attempts to pass at
> a time or under conditions which are not reasonably
> safe. * * *
>
> " * * *
>
> " * * * It is also negligence on the part of one
> to drive at a rapid rate of speed so close to a
> car ahead that, if the driver of the latter slows
> down, it becomes necessary for him to turn to the
> left to avoid striking it, and particularly when
> in doing so he must turn in front of a vehicle
> coming from the opposite direction." 86 Mont. 550,
> 551.

To the same effect, see Cowden v. Crippen, 101 Mont. 187, 207, 53 P.2d 98 (1936); State v. Biering, 111 Mont. 237, 240, 107 P.2d 876 (1940).

Comet Corp.'s last argument relating to the failure to obey the rule of assured clear distance ahead, and to the failure to pass in safety, is that even if there was negligence on the part of its driver, the jury could still reasonably find that the collision between the Comet Corp. truck and the McQuade van was not proximately caused by the violation of any highway traffic statutes. Accordingly, Comet Corp. argues, a directed verdict in plaintiffs' favor would be improper. We do not accept this argument. The facts of this case show negligence and proximate causation.

Comet Corp. argues the jury was entitled to determine that the collision took place after the Comet truck completely passed the Mid-West Coast truck and had swung back in its own lane of traffic. The plain implication of its argument is that the jury was entitled to determine the McQuade van, at the last moment, veered over into the wrong lane of traffic and struck the rear trailer wheels of the Comet truck. Comet Corp.'s argument is based on the fact the high-way patrolman could not find the precise point of impact in relation

to the center line.  The investigating highway patrolman could not rely on skid marks to reconstruct the event and pinpoint the impact with respect to the center line of the highway because the center line was not visible until the snow had been scraped away.

The evidence is overwhelmingly against the jury making such a "reasonable" conclusion.  The highway patrolman could only estimate the point of impact; he testified that it was "approximately at the center line of the highway."  The driver of the Mid-West Coast truck could not see the impact as his view was shielded by Comet's trailer. However, he did testify that although the Comet truck had returned substantially to the eastbound lane when he heard the impact, the trailer's left rear wheels were still on the north (westbound) side of the center line when the impact occurred.  The Comet truck's relief driver, Roy Huestess, who was riding in the cab at the time of the collision, testified that at the time of impact the trailer was not in a straight line with the tractor, that the left rear of the trailer was "one or two feet" farther north than the front of the trailer.

The driver of the Comet truck, Hamblen, testified concerning his belief as to the point of impact:

> "Q.  Do you, from the location of your trailer
> and the recollection you have of where the two
> vehicles were, where do you think the impact
> occurred with respect to the center of the road?
>
> " * * *
>
> "A.  To the best of my knowledge it would be --
> again you can't use center line -- it would be to
> the center of the road somewhat; I don't know
> exactly how you would say which side.  There was
> no center line on the road as we know it.
>
> " * * *
>
> "Q.  That is what you mean today when you say that
> you think it occurred at the center line?  You don't
> mean to say that as an exact statement on your part?
> A.  No.  That is approximately.  I don't know the
> exact center of the road.  Like I say, we don't know
> where the center line was.

"Q. Even though you don't know where it occurred then exactly you're satisfied that the McQuade van was in its proper driving lane at all times that you observed it?  A.  When it was coming toward me, yes.

"Q.  Until it passed your tractor?  A.  Yes, sir." (Emphasis added.)

Victor Vetter, who was sitting in the right front passenger seat of the McQuade van at the time of the collision, testified that as the Comet Corp. rig came around Mid-West Coast, its trailer came around at an angle/so that at the time of the collision, Comet's trailer was "mostly" in the westbound lane.  Ernest Ibach, another passenger in the McQuade van, was sitting in the rear seat when the collision occurred.  He testified the passing Comet truck was "way over on our side of the lane" and appeared to be jackknifing when the McQuade van and Comet's trailer collided.

From this evidence we conclude that Comet Corp. and its driver, Robert D. Hamblen, were liable as a matter of law.  The District Court should have granted a directed verdict against them. This negligence started when Comet's truck driver carelessly placed himself in a position of not being able to stop behind the Mid-West Coast truck without colliding with it, in violation of section 32-2160(a), R.C.M. 1947.  It continued when the Comet truck driver, in an effort to avoid a rearend collision with the stalled Mid-West Coast truck, without first looking to see if he could pass safely, pulled into the westbound lane, in violation of section 32-2155. This negligence persisted right up to the moment of impact with the McQuade van.  The evidence is overwhelming  that the Comet Corp. truck was in the wrong lane of traffic at the time of impact.

Even if we were to assume some negligence on the part of the driver of the McQuade van, this negligence could not be imputed to plaintiff's husband who was a passenger.  Wolf v. O'Leary, Inc., 132 Mont. 468, 318 P.2d 582 (1957).  Moreover, any such negligence would at most be a concurring proximate cause of the accident and

-18-

Comet Corp. and its driver would still be liable. Halsey v. Uithof, 166 Mont. 319, 532 P.2d 686 (1975).

Plaintiffs' final issue is whether Mid-West Coast was liable as a matter of law in failing to keep its brakes in proper working order in violation of section 32-21-143.3, R.C.M. 1947; in failing to keep its brakes from freezing; and, in failing to display brake lights and keep them free from snow.

The trial court properly refused to grant a directed verdict in plaintiffs' favor on this issue. Even assuming the statutory violations as asserted by plaintiffs, whether such violations proximately caused Kudrna's death was a question of fact for the jury to determine. Sztaba v. Great Northern Ry., 147 Mont. 185, 411 P.2d 379 (1966).

In Halsey v. Uithof, supra, this Court stated as to proximate cause and intervening cause:

> "We agree with the proposition that where one has negligently caused a condition of danger, he is not relieved of responsibility for damage caused to another merely because the injury also involved the later misconduct of someone else. But, this is true only if both negligent acts are in fact concurring proximate causes of the injury; and it is not true if the later negligence is an independent, intervening sole cause of the incident. Boepple v. Mohalt, 101 Mont. 417, 54 P.2d 857.
>
> "In determining whether the negligence in creating a hazard (the truck stalled on the highway) was a proximate cause of the accident, this test is to be applied: Did the wrongful act, in a natural, continuous sequence of events, which might reasonably be expected to follow, produce the injury?" 166 Mont. 327, 328.

We cannot say as a matter of law that the stalled Mid-West Coast truck was a concurring proximate cause of the collision between the Comet Corp. truck and the McQuade van. Here there were intervening acts between any alleged statutory violations by the Mid-West Coast truck and the actual collision. Since the causal connection between Mid-West Coast's truck stopping on the highway and the subsequent collision between the other two vehicles was a question of

fact, the trial court did not err in presenting the issue of Mid-West Coast's liability to the jury.

It was error, however, to instruct the jury on the sudden emergency doctrine in a manner which could have allowed the jury improperly to apply the doctrine to the conduct of Mid-West Coast.

The court's Instruction No. 21 states:

"You are instructed that when a person is faced with a sudden emergency which is not created by his own negligence, his conduct is to be tested by what an ordinarily prudent person would have done under the same or similar circumstances, and he is not chargeable with negligence for failing to adopt the most judicious course as disclosed by subsequent events."

This instruction correctly states the sudden emergency doctrine as it has been adopted by this Court. See: Peabody v. Northern Pacific Railway Co., 80 Mont. 492, 261 P. 261 (1927); Maynard v. City of Helena, 117 Mont. 402, 160 P.2d 484 (1945).

While correct as an abstract statement of the law, Instruction No. 21 as given fails to limit application of the doctrine to the question of Comet Corp.'s liability. This is further underscored by the giving court's Instruction No. 13:

"Although there are several defendants in this action, it does not follow that if one is liable, all are liable. Each defendant is entitled to a fair consideration of his own defenses and is not to be prejudiced by any finding that you may make against the other. Except as otherwise indicated, all instructions given to you govern the case as to each defendant." (Emphasis supplied.)

Plaintiffs' case against defendants Mid-West Coast Company and its drivers James Kennely and Richard Hendrick was not "governed" by the sudden emergency doctrine. These defendants neither asserted the doctrine applied to them nor relied upon it in any way. Under the above instructions, however, the jury could have been led to erroneously assume that Mid-West Coast's conduct was legally excusable.

We have previously held that the trial court should have granted a directed verdict of liability against Comet Corp. and that

-20-

it was improper to give Comet Corp.'s offered sudden emergency instruction. Here, there are parties defendant other than Comet Corp. and the question thus becomes whether the giving of this instruction without any indication that the doctrine's application must be confined to Comet Corp. constitutes reversible error as to the verdict and judgment in favor of these other defendants?

We conclude that it does. In an action such as the present one, involving multiple defendants whose interests and theories of the case are antagonistic to each other as well as to the plaintiff, it is most important the jury instructions be accurate and precise. It is not enough that an instruction which might lead to one party being relieved of liability correctly states the law; the instruction should also state to which of the parties it properly may be applied. When, as here, there is no such limitation, and the jury therefore may be misled, its verdict and the judgment based thereon cannot stand.

Plaintiffs are not the only parties who were prejudiced by the given sudden emergency instruction. Since we have held Comet Corp. and its driver, Robert Hamblen, liable as a matter of law, plaintiffs' eventual money recovery will be their responsibility. Affirming the judgment relieving Mid-West Coast Company and its drivers of liability would result in Comet Corp. being solely responsible for the entire amount found to be due plaintiffs, in spite of the fact that the issue of liability was improperly presented to the jury.

We acknowledge that plaintiffs did not object at trial to the giving of the sudden emergency instruction on the grounds that the jury might misapply the instruction to Mid-West Coast Company; their objection was that Comet Corp., the party offering the instruction, was not entitled to it as a matter of law. It is also acknowledged that neither plaintiffs nor Comet Corp. specified the giving of this

instruction as reversible error as to the judgment in favor of Mid-West Coast Company.  Under the narrow circumstances of this case, we do not think these facts preclude this Court's review of this issue on its own motion.

The Supreme Court of Indiana, in Big Creek Stone Co. v. Seward, 144 Ind. 205, 43 N.E. 5 (1896), stated:

> " * * * If the court were limited to the arguments
> and reasoning of counsel in its decisions of cases,
> to the exclusion of its own observations, many cases
> would lead us far from what we understand to be the
> true object of the court."

In a later case, the Indiana Supreme Court again addressed the question of whether it is proper for an appellate court to go beyond the issues as narrowly presented.  In Cleveland, C.C. & St.L. Ry. Co. v. Moore, 170 Ind. 328, 84 N.E. 540 (1908), it stated:

> " * * * Where resort to the record is necessary,
> the case will be determined by the record, and in
> such a case the court will not regard itself as bound
> down to the conceptions of counsel on either side as
> to the nature of the controlling facts."

To the same effect see Van Winkle v. Van Winkle, 124 Ind.App. 626, 119 N.E.2d 328, 329 (1954).

By this decision this Court is not repudiating the sound rules of practice which require timely, specific objections to instructions and the full presentation of issues for review on appeal.  On the facts having carefully reviewed the entire record, we hold that a serious error which appears on the face of that record is reviewable, although not presented by the parties.  The sudden emergency instruction should not have been given at all in this case.  As given, it was too general and allowed the sudden emergency doctrine to be erroneously applied to parties defendant who neither offered the instruction nor relied on it at any stage of the proceedings.  The instruction was prejudicial ultimately to two of the three sets of parties.  Substantial injustice resulted from the giving of this instruction, an injustice which this Court cannot and will not ignore.

Accordingly, the judgment in favor of Mid-West Coast Company and its drivers, James Kennely and Richard Hendrick, is reversed, and the cause remanded for a new trial on the issue of liability.

The judgment in favor of Comet Corp. and its driver, Robert Hamblen, is reversed and the cause remanded to the District Court for trial on the issue of damages alone.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices