No. 97-101

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 40

GLENNA CRAIG,

Plaintiff, Respondent, and Cross-Appellant,

v.

F.F. SCHELL, as the Personal Representative of the

ESTATE OF CHARLES MOSEMAN, Deceased,

Defendant, Appellant, and Cross-Respondent.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

No

The Honorable John Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert J. Emmons, Emmons & Sullivan; Great Falls, Montana

For Respondent:

Torger Oaas, Attorney at Law; Lewistown, Montana

Submitted on Briefs: June 18, 1998

Decided: March 11, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶I. F.F. Schell, Personal Representative of the Estate of Charles Moseman, appeals from the order of the Tenth Judicial District Court, Fergus County, which granted in part Glenna Craig's motion for a new trial. Craig cross-appeals from the District Court's order which denied in part her motion for a new trial and its prior order which denied her motion for partial summary judgment on the issue of liability. We affirm in part and reverse in part.

¶II. Craig raises the following issues on cross-appeal:

¶III. 1. Did the District Court err when it denied Craig's motion for partial summary judgment on the issue of liability?

¶IV. 2. Did the District Court abuse its discretion when it denied Craig's motion for a new trial based on jury misconduct?

¶V. Schell raises the following issue on direct appeal:

¶VI. 3. Did the District Court abuse its discretion when it granted Craig's motion for a new trial on the basis of defense counsel's comments in closing argument?

## BACKGROUND

¶VII. This case arose from a vehicle accident which occurred at approximately 6 p. m. on November 26, 1993, on Highway 236 between the towns of Hilger and Winifred, Montana. Craig was proceeding in the northbound lane and the Mosemans were in the southbound lane. As the Craig and Moseman vehicles approached each other, a deer appeared on the road between the vehicles. Moseman's vehicle swerved to the far right side of the road toward the barrow pit, then veered abruptly to the left. The vehicle went into a broadside skid or "yaw" and Moseman lost control of his vehicle. At some point during these events, the left front portion of Moseman's vehicle hit the deer. The Moseman vehicle continued in its yaw across the centerline of the highway into Craig's lane of travel and collided with her vehicle. Moseman and his wife died as a result of the accident and Craig was injured.

¶VIII. Craig filed a complaint against Schell, in his capacity as personal representative of Moseman's estate, alleging that Moseman had been negligent in the operation of his vehicle, his negligence caused the accident, and she suffered injuries

as a result. Craig subsequently moved for partial summary judgment on the issue of liability and asserted that all drivers have a statutory duty to stay on the right half of a roadway when driving. She further maintained that the undisputed facts of the case were that Moseman swerved into her lane of travel and thereby breached his statutory duty and caused the collision. The District Court denied Craig's motion and the action proceeded to a jury trial. The jury returned a verdict in favor of Schell and found that Moseman had not been negligent in the operation of his vehicle.

¶IX. Craig timely moved for a new trial pursuant to Rule 59, M.R.Civ.P., and § 25-11-102, MCA, on three bases: jury misconduct, improper closing argument by Schell's counsel, and insufficient evidence to support the verdict. The District Court granted Craig's motion for a new trial on the basis of improper comments of Schell's counsel in closing argument and denied it on the remaining bases. Craig also filed a Rule 50, M.R.Civ.P., motion for judgment as a matter of law on the issue of Moseman's liability, which the court denied. Schell appeals from the District Court's order which granted a new trial, and Craig cross-appeals from the orders which denied a new trial on the basis of jury misconduct and denied her motion for partial summary judgment on the issue of liability.

ISSUE 1

¶X. Did the District Court err when it denied Craig's motion for partial summary judgment on the issue of liability?

¶XI. We review a district court's decision to grant or deny a summary judgment motion using the same Rule 56, M.R.Civ.P., criteria as the district court. *See S.M. v. R.B.* (1993), 261 Mont. 522, 526, 862 P.2d 1166, 1168. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P.; *Dillard v. Doe* (1992), 251 Mont. 379, 382, 824 P.2d 1016, 1018. If the moving party meets the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law, the party opposing the motion must come forward with evidence that demonstrates that a genuine issue of material fact exists which precludes summary judgment. *See Dillard*, 251 Mont. at 382, 824 P.2d at 1018.

¶XII. Negligence actions usually involve questions of fact regarding breach of duty and causation; as a result, they are not ordinarily susceptible to summary judgment

and are usually better resolved at trial. *See S.M.*, 261 Mont. at 526, 862 P.2d at 1168; *Dillard*, 251 Mont. at 382, 824 P.2d at 1018. A question of fact in a negligence case may be determined as a matter of law only where reasonable minds could reach but one conclusion as to whether a duty was breached or whether a breach of a duty caused an accident. *See Dillard*, 251 Mont. at 382, 824 P.2d at 1019.

¶XIII. Craig moved for summary judgment on the issue of liability and contended that no issues of material fact existed regarding how the accident occurred or whether Moseman breached his statutory duty to drive on the right side of the road. The District Court denied the motion, and concluded that there were genuine issues of material fact as to whether Moseman acted as a reasonable and prudent driver under the circumstances at the time of the accident and, as a result, that the issue of whether Moseman was negligent was a question for the jury. Craig asserts that the District Court erred.

¶XIV. Craig first argues that the evidence she provided in support of her motion establishes that the presence of Moseman's vehicle in her lane of travel, in violation of § 61-8-321, MCA, resulted from his voluntary act of over-correcting his vehicle when it went off the side of the road, which caused the vehicle to skid to the left. She contends that because Moseman's act of over-correcting was voluntary, his violation of § 61-8-321, MCA, was negligence as a matter of law.

¶XV. Subject to exceptions not at issue here, a driver has a duty to drive on the right half of a roadway. *See* § 61-8-321, MCA. It is undisputed in this case that Moseman violated § 61-8-321, MCA, when his vehicle skidded over the centerline of the highway and collided with Craig's vehicle.

¶XVI. The concept of negligence per se and its applicability in this state has had a somewhat confusing history. The theory behind the rule is that as between two drivers--one who has been free from fault and violated no law, and one who has violated a law upon which the other depended--fault should, as a matter of public policy, be attributed to that person who violated the law. It is a useful concept. Insurance adjusters understand it and rely on it when resolving claims. As a result, litigation is avoided in most instances and injured parties receive prompt payment of their medical expenses and property damages. As with any rule of law, however, it has not developed without an exception. A brief review of how this Court has recently treated the concept is helpful.

¶XVII. In 1971, this Court adopted the involuntary action rule, an exception to negligence per se, in *Duchesneau v. Silver Bow County* (1971), 158 Mont. 369, 492 P.2d 926. In that case, the operator of a water truck lost control of the truck when its air brakes unexpectedly failed, through no fault of his own. The plaintiff argued that the operator was negligent per se by reason of the violation of a motor vehicle statute. On appeal, we held that a violation of a motor vehicle statute in an emergency due to circumstances beyond a driver's control is an exception to the rule that the driver is negligent per se by reason of that violation.

¶XVIII. The very next day, however, we decided *Farris v. Clark* (1971), 158 Mont. 33, 487 P.2d 1307, in which we affirmed the grant of summary judgment in favor of a plaintiff whose vehicle was struck from the rear by the defendant when attempting to pass. The defendant claimed that a power steering failure in her decedent son's vehicle should have excused him of liability. *See Farris*, 158 Mont. at 37-38, 487 P.2d at 1309. Without mentioning the involuntary action rule from our decision in *Duchesneau*, we concluded that the district court properly granted summary judgment to the plaintiff and noted that the true cause of the accident was the decedent's failure to pass at a safe distance or drive at a speed commensurate with the highway conditions. *See Farris*, 158 Mont. at 38, 487 P.2d at 1313.

¶XIX. A few years later, in *Custer Broadcasting Corp. v. Brewer* (1974), 163 Mont. 519, 518 P.2d 257, we reaffirmed our decision in *Farris* and reversed a district court's refusal to grant a directed verdict in favor of the plaintiff. In that case, a driver's vision was impaired by swirling snow caused by an oncoming passing motorist. The defendant testified that his visibility was reduced to zero, he slowed, and never again saw the plaintiff's vehicle until he struck it from the rear. Embracing the negligence per se rule, we stated that "[t]his Court has long held that violation of a statute concerned with highway traffic is negligence as a matter of law. *Farris* should have controlled the court's decision in considering plaintiff's motion for a directed verdict." *Custer*, 163 Mont. at 522, 518 P.2d at 259.

¶XX. Shortly after our decision in *Custer*, however, the application of the doctrine of negligence per se became somewhat blurred. Without mentioning either *Custer* or *Farris*, in *Lyndes v. Scofield* (1979), 180 Mont. 177, 589 P.2d 1000, we relied on the *Duchesneau* involuntary action rule and overruled a district court's order granting a new trial. Specifically we held that:

It is well established that involuntary violation of a statute in an emergency due to circumstances beyond the actor's control does not constitute negligence *per se*. *Duchesneau v. Silver Bow County* (1969) [sic], 158 Mont. 369, 377, 492 P.2d 926, 930. Rather, Scofield's presence in the incorrect lane is only prima facie evidence of negligence which may be rebutted. *McGinnis v. Phillips* (1922), 62 Mont. 223, 228, 205 P. 215, 216.

*Lyndes*, 180 Mont. at 185, 589 P.2d at 1004.

**¶XXI. In *Lyndes*, a motorist failed to observe and avoid a chuckhole in the road before her. Her car struck the chuckhole, slid out of control, and collided with an automobile driven by the plaintiff. *See Lyndes*, 180 Mont. at 179, 589 P.2d at 1001. We held that, under the circumstances of that case, the motorist's presence in the incorrect lane was merely *prima facie* evidence of negligence which she was entitled to rebut. *See Lyndes*, 180 Mont. at 185, 589 P.2d at 1004.**

**¶XXII. Factually, it is hard to reconcile the decisions in *Lyndes*, *Custer*, and *Farris*. The actions of the defendant in *Lyndes* when encountering an unexpected chuckhole seem no less voluntary than the actions of the defendant in *Custer* who encountered blinding, swirling snow. One might further argue that the situation in *Farris* is more analogous to *Duchesneau* since the defendant in *Farris* contended that a loss of power steering played a role in the collision. The defendant in *Lyndes,* however, was not faced with an unexpected brake failure or similar emergency which was beyond her control as was the defendant in *Duchesneau.* In fact, no one can seriously dispute that a chuckhole is a fairly predictable hazard when driving Montana roads during the winter. Yet, in *Lyndes*, we stated that the defendant's conduct should be evaluated by a jury, even though in *Custer* and *Farris* we concluded that the defendants were negligent as a matter of law.**

**¶XXIII. Recently, in the case of *Cameron v. Mercer*, 1998 MT 134, 960 P.2d 302, however, we again recognized the rationale of *Lyndes* and affirmed the district court's denial of the plaintiff's motion for a new trial. In that case, Cameron was driving westbound on Highway 10, a two-lane highway west of Missoula. Mercer, the defendant, was driving eastbound on Highway 10. It was dark, both drivers were using their headlights, and neither were speeding. As the vehicles approached each other, Mercer drove over the fog line, onto the shoulder of the road, and into the gravel. As he attempted to drive back onto the road, he skidded in a sideways "yaw"**

into Cameron's lane of travel where the collision occurred.

¶XXIV. After his case-in-chief, Cameron moved for a directed verdict on the issue of liability, alleging that the defendant violated several traffic statutes and, therefore, was negligent as a matter of law. The district court denied the motion. At trial, Mercer's sister testified that her brother told the investigating officer that he swerved to avoid some headlights in his lane and that after he swerved to avoid the oncoming car he saw a small furry animal running across the roadway. Upon completion of the case, the jury returned a defense verdict. Acknowledging *Lyndes*, we affirmed the district court's decision to deny the directed verdict motion, and noted:

In this case, the parties presented conflicting theories as to the cause of the accident . . . . Mercer's theory was that any statutory violations were involuntary; that is, that he was forced to swerve off of the roadway by an oncoming car and that he did everything he could to keep control of his vehicle and avoid an accident.

*Cameron*, ¶ 4.

¶XXV. Justice Trieweiler specially concurred in *Cameron* and was joined by Justices Regnier and Hunt. The concurring Justices affirmed the jury's verdict based on the instructions that were given, but noted that the adequacy of the instructions was not raised on appeal. *See Cameron*, ¶ 31 (Trieweiler, J., concurring). The concurrence emphasized, however, that this Court has repeatedly held that the violation of a statute enacted for the safety of the public, including one which regulates the operation of motor vehicles on the public highways, is negligence per se. *See Cameron*, ¶ 21 (Trieweiler, J., concurring) (citing *Kudrna v. Comet Corp.* (1977), 175 Mont. 29, 38-39, 572 P.2d 183, 188-89). Although the concurring Justices recognized that this Court has held that an involuntary violation of a statute in an emergency does not constitute negligence per se, citing *Lyndes*, they urged that this exception should only be applied in the most extreme situations. *See Cameron*, ¶ 30 (Trieweiler, J., concurring).

¶XXVI. In this case, Craig argues that the District Court misapplied *Lyndes* when it concluded that there were factual issues regarding whether Moseman acted as a reasonable and prudent driver under the circumstances. Craig does not ask us to overrule *Lyndes*, but instead attempts to distinguish the facts in that case from those

in the case at hand. For example, Craig argues Moseman's act of over-correcting his vehicle was a voluntary one and, thus, not subject to our holding in *Lyndes*.

¶XXVII. Presently it is very difficult indeed for district courts, attorneys, and insurance adjusters in Montana to sort out the concepts of negligence per se and its exception in the setting of many motor vehicle accidents. Our holding in *Lyndes* certainly stands for the principle that the doctrine of negligence per se should not be applied in situations in which a motorist violates a motor vehicle statute when his or her acts are involuntary and due to circumstances beyond the motorist's control. However, as we will discuss later, there are certain situations where a motorist's conduct is characterized as "involuntary" yet such conduct is the direct result of hazards that every motorist must anticipate.

¶XXVIII. We also appreciate, as the dissent emphatically points out, that neither party has asked us to overrule *Lyndes*. However, in our *de novo* review of a summary judgment motion, we cannot ignore the validity of the case upon which both parties and the District Court rely and its fundamental application to the facts presented. Furthermore, it serves no purpose to allow confusion to permeate an area of the law which affects practically every Montanan.

¶XXIX. Upon further review, therefore, we conclude that *Lyndes* should be overruled because it involved a situation in which the driver's conduct of crossing the center line should not have been characterized as "involuntary" or due to circumstances beyond the driver's control and, therefore, the doctrine of negligence per se was directly applicable. This is the same situation presented to us in this case. Drivers of motor vehicles must anticipate certain obstacles, as well as adverse driving conditions. By not applying the doctrine of negligence per se in situations as we are presented with here, some motorists and their insurance carriers may improperly be relieved of responsibility, resulting in innocent injured parties and their families going uncompensated. In *Lyndes*, we improperly labeled the driver's conduct as "involuntary" and beyond her control and, therefore, concluded that the violation of a motor vehicle statute did not constitute negligence per se. Thus, *Lyndes* is overruled to the extent that it holds that a party who violates a motor vehicle statute due to his or her own conduct may avoid application of the negligence per se doctrine for that violation. The concept that the violation of a motor vehicle statute constitutes negligence per se is an essential one if this Court is to provide consistency in the area of automobile negligence law. It is for these reasons that we now emphasize, as did

Justice Trieweiler in his special concurrence in *Cameron*, that it is only under extremely limited circumstances that the violation of a motor vehicle statute will not constitute negligence as a matter of law. Upon reflection, *Duchesneau* was properly decided because the defendant in that case clearly was reacting to an unexpected emergency over which he had no control (sudden brake failure); however, such hazards as were encountered by the defendants in *Custer* (swirling snow), *Lyndes* (chuckhole), *Cameron* (small furry animal), and this case (deer), are the types of hazards that are not uncommon on Montana roads and which drivers must anticipate.

¶XXX. It is also helpful in our discussion to address this Court's recent decisions regarding a different, but related, concept in automobile negligence law, the sudden emergency doctrine. The sudden emergency doctrine is stated as "[o]ne who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. Such . . . act or omission . . . may be called a mistake, but not carelessness." *Peabody v. Northern Pacific Railway Co.* (1927), 80 Mont. 492, 497, 261 P. 261, 262. In *Kudrna v. Comet Corp.* (1977), 175 Mont. 29, 572 P.2d 183, we pointed out that the sudden emergency doctrine rarely should be applied in ordinary automobile accident negligence cases. Specifically, we observed that the doctrine is qualified by the requirement that people anticipate and be prepared for some emergencies when engaged in an activity where emergencies are likely to arise, and that any driver "'must be prepared for the sudden appearance of obstacles in the highway.'" *Kudrna*, 175 Mont. at 43, 572 P.2d at 191 (quoting *Erickson v. Perrett* (1976), 169 Mont. 167, 174, 545 P.2d 1074, 1079).

¶XXXI. Moreover, we again addressed the application of the sudden emergency doctrine in *Eslinger v. Ringsby Truck Lines, Inc*. (1981), 195 Mont. 292, 636 P.2d 254. There, we reiterated the *Kudrna* principle that the doctrine should not be used in ordinary automobile accident cases and quoted that portion of *Kudrna* which emphasized that some emergencies must be anticipated and drivers must be prepared for the sudden appearance of obstacles on the highway. *See Eslinger*, 195 Mont. at 299-300, 636 P.2d at 258. Finally, in the case of *Simonson v. White* (1986), 220 Mont. 14, 25, 713 P.2d 983, 989, we stated that a sudden emergency instruction should never be given in an automobile accident case. We have similarly put to rest the defenses of the "unavoidable accident" and "the mere fact of an injury." *Helmke v. Goff* (1979), 182 Mont. 494, 500, 597 P.2d 1131, 1134; *Graham v. Rolandson* (1967),

150 Mont. 270, 289, 435 P.2d 263, 273.

¶XXXII. In the present case, it is undisputed that Moseman encountered a deer running across his path of travel. He first swerved to the right to avoid the deer, and then over-corrected, causing his vehicle to enter Craig's lane of travel, and the collision ensued. Anyone who drives motor vehicles in rural Montana must anticipate wildlife unexpectedly running across the road, just as one must anticipate chuckholes and black ice. These hazards, in most instances, can be avoided when drivers proceed in a careful and prudent manner. However, if one drives too fast for the conditions, or fails to keep a proper lookout, such hazards may result in serious accidents.

¶XXXIII. In the final analysis, we conclude that we have wrongly characterized certain conduct as "involuntary" when dealing with the concept of negligence per se. Indeed, our treatment of the concept in *Lyndes* collides with the principle set forth in *Kudrna*, *Eslinger*, *Simonson*, and *Graham*; that is, drivers must be prepared to deal with the appearances of sudden obstacles or certain emergencies on the highway. A driver should not be able to avoid the application of the negligence per se doctrine because he or she instinctively or, what we have labeled until now as "involuntarily," reacts to certain obstacles which should be anticipated, such as black ice, animals running on the highway, or a chuckhole in the road. Drivers constantly face such hazards and must be prepared to deal with them safely and not jeopardize other motorists or pedestrians. When a driver violates a traffic statute because he or she "reacted" to such a hazard and injures another party who has complied with the traffic law, the violator should be found negligent as a matter of law. Allowing such cases to go to the jury results in anomalies, such as what has occurred here.

¶XXXIV. We therefore conclude that the circumstances under which a driver may violate a motor vehicle statute and not be considered negligent as a matter of law are quite rare. Certainly, if the defendant's presence on the wrong side of the road is caused by the plaintiff's prior negligence, the exception should apply. For example, in *Palmer by Diacon v. Farmers Insurance Exchange* (1988), 233 Mont. 515, 761 P.2d 401, we affirmed the use of an instruction which set forth several motor vehicle statutes and then stated:

If you find that the unidentified truck driver or David Palmer violated one of the statutes just read to you, you will find that such violation was negligence unless on behalf of such party its [sic] is proven by a preponderance of the evidence that he did what might

reasonably be expected of a person or [sic] ordinary prudence, acting under similar circumstances, who desired to comply with the law. In order to sustain such burden of proof, such party must prove by a preponderance of the evidence that he was faced with circumstances which prevented compliance or justified noncompliance with the statute.

*Palmer*, 233 Mont. at 525-26, 761 P.2d at 408 (alterations in original). The defendant argued on appeal that the instruction was improper because it amounted to a "sudden emergency" instruction which was banned in *Simonson*. We correctly pointed out that the instruction was proper under the circumstances because "[i]t requires the jury to decide not whether a sudden emergency erupted but whether either driver in this case was negligent forcing the other to take protective measures." *Palmer*, 233 Mont. at 526, 761 P.2d at 408. *See also Shannon v. Hulett* (1983), 205 Mont. 345, 668 P.2d 228. There may be other situations in which a driver may involuntarily violate a traffic safety statute and not be negligent as a matter of law, but we shall address those situations on another day.

¶XXXV. Based on the foregoing, we hold the District Court erred when it denied Craig's motion for partial summary judgment on the issue of liability.

## ISSUE 2

¶XXXVI. Did the District Court abuse its discretion when it denied Craig's motion for a new trial based on jury misconduct?

¶XXXVII. As her second issue on cross-appeal, Craig contends that the District Court abused its discretion by not granting her motion for a new trial on the basis of jury misconduct. Since we have concluded that the District Court erred when it denied Craig's motion for partial summary judgment on the issue of liability, there is no need to address this issue.

## ISSUE 3

¶XXXVIII. Did the District Court abuse its discretion when it granted Craig's motion for a new trial on the basis of defense counsel's comments in closing argument?

¶XXXIX. Craig moved for a new trial on several grounds. Since we have granted Craig a new trial on her cross-appeal, the question of whether the District Court

abused its discretion by granting Craig's motion for a new trial need not be addressed. However, anticipating the second trial in this matter, it is appropriate that we address one aspect of Craig's motion to avoid error on retrial.

¶XL. Craig argued, in part, that a new trial was warranted because one of Schell's attorneys improperly attempted to discuss the contents of Craig's original statement of damages during closing argument. Craig urges that these statements were in disregard of the court's earlier determination that the statement was not relevant to the proceedings.

¶XLI. During pretrial proceedings, Schell requested and received from Craig a statement which outlined the specific types and amounts of damages she would be requesting at trial. In the pretrial order, however, Craig listed damage amounts less than those in her earlier statement of damages. When Schell's counsel cross-examined Craig at trial, he attempted to elicit testimony from her regarding the discrepancies between her original statement of damages and the pretrial order. Craig's attorney objected and, after an unreported side bar conference, defense counsel moved onto a different line of questioning. In its order on the motion for a new trial, the District Court stated that it had been unequivocally clear to counsel during the side bar that Craig's original statement of damages had been superseded by the pretrial order and, therefore, was irrelevant.

¶XLII. In closing argument, Schell's counsel again attempted to raise the issue of Craig's original statement of damages in an apparent effort to attack both Craig's and her attorney's credibility by implying that they had inflated or lied about the amount of her damages. Craig's attorney objected that the statement of damages was not in evidence. The District Court sustained the objection, but defense counsel continued on the same subject.

¶XLIII. The District Court subsequently determined that Craig was entitled to a new trial based upon defense counsel's persistent questioning regarding the original statement of damages. Schell asserts that the court's determination is incorrect because the statement of damages is a pleading, amounts to a judicial admission, and may be presented to the jury without being admitted in evidence. Schell further contends that at the unreported side bar conference during trial his attorney was led to believe that he could use the statement of damages in his closing argument, even though he could not cross-examine Craig about it. Without the benefit of a transcript

of the side bar, we are unable to evaluate Schell's contention.

¶XLIV. Rule 5(c) of the Uniform District Court Rules requires a pretrial order to include a statement that the pretrial order supersedes the pleadings and governs the subsequent course of trial. Moreover, the Advisory Commission Notes to this Rule expressly state that "[t]he pre-trial order is intended to supersede the pleadings and to state the issues to be tried. It is not intended that parties be held to or examined concerning claims and other matters contained in prior pleadings." Rule 16(e), M.R. Civ.P., also explicitly provides that the pretrial order controls the subsequent course of the action and our cases so holding are legion. *See, e.g., State ex rel. State Compensation Mut. Ins. Fund v. Berg* (1996), 279 Mont. 161, 179-80, 927 P.2d 975, 986; *Zimmerman v. Robertson* (1993), 259 Mont. 105, 111, 854 P.2d 338, 342; *Naftco Leasing Ltd. Partnership 301 v. Finalco, Inc.* (1992), 254 Mont. 89, 93-95, 835 P.2d 728, 731-32; *Workman v. McIntyre Const. Co*. (1980), 190 Mont. 5, 11-12, 617 P.2d 1281, 1285. Therefore, contrary to Schell's assertions, and without regard to whether it technically was a pleading when provided to Schell, Craig's original statement of damages was superseded by the damage claims in the pretrial order by operation of law according to Rule 16(e), M.R.Civ.P., and pursuant to the express statement in the pretrial order, required by Rule 5, Unif.D.Ct.R., that the order superseded the pleadings. As a result, the original statement of damages and evidence relating thereto were irrelevant and inadmissible and, indeed, no such evidence was admitted.

¶XLV. We conclude that the District Court properly granted Craig a new trial. On retrial, defense counsel is limited to cross-examining the plaintiff on the damage claims alleged in the pretrial order.

¶XLVI. Affirmed in part and reversed in part.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.


Justice Karla M. Gray, dissenting.


**¶47. I respectfully dissent from the Court's opinion. It is my view that, in its eagerness to clarify negligence *per se,* the <u>Lyndes</u> "involuntary action" rule and the "sudden emergency" doctrine in automobile accident cases, the Court ignores the arguments raised and briefed by the parties, departs from our proper role, and reverses the District Court in derogation of our longstanding rule that we will not overturn a trial court's decision on the basis of arguments not presented to that court. I cannot agree.**

**¶48. Craig moved for partial summary judgment in the District Court on the issue of liability, asserting that Moseman had been negligent *per se* by violating § 61-8-321, MCA, when his vehicle crossed over the center line of the highway and collided with her vehicle. The thrust of Craig's motion was that no genuine issue of material fact existed as to Moseman's voluntary violation of the statute requiring a driver to drive on the right half of a roadway and, as a result, that the <u>Lyndes</u> involuntary action rule--under which an involuntary violation of the statute is only prima facie evidence of negligence--did not prevent Moseman's statutory violation from being negligence *per se*. Craig did not argue in the District Court that <u>Lyndes</u> should be overruled; she contended only that her evidence established Moseman's voluntary overcorrection of his vehicle, thereby making the <u>Lyndes</u> exception to negligence *per se* inapplicable. The District Court determined that Craig did not establish the absence of genuine issues of material fact regarding the voluntariness of Moseman's actions or that his**

conduct was not that of a reasonable and prudent driver, and denied Craig's motion for summary judgment on liability on that basis. On appeal, Craig contends only that the District Court misapplied <u>Lyndes</u> and <u>Kudrna</u>. That, then, is the issue before us.

¶49. Rather than address Craig's actual arguments, however, and in its desire to correct what it considers an improperly expanded and misapplied rule of law, the Court raises--and resolves--its own issue regarding the continued viability of the <u>Lyndes</u> rule. In my view, this is an unwarranted departure from our proper role.

¶50. This Court's duty is to decide cases based on the issues and arguments raised by the parties. Indeed, our system of appellate review is premised on providing parties with the opportunity to argue their positions and challenge the positions and legal authority propounded by their opponents, following which this Court can make a reasoned decision based on the issues and arguments raised by counsel.

While the temptation is often great to decide a case on the basis of the argument that "should have been made," but was not, in blind-siding an issue we run the very real risk of substituting advocacy for neutrality.

State v. Zabawa (1996), 279 Mont. 307, 318, 928 P.2d 151, 158 (Nelson, J., concurring). Furthermore, to raise and determine issues *sua sponte* is unfair to litigants who find their cases resolved on unforeseen grounds and to district courts which find their decisions overturned on bases they never had an opportunity to address. Thus, while I do not disagree that our cases on negligence *per se*, the involuntary action rule and the sudden emergency doctrine are somewhat confusing and in need of clarification, a sweeping decision on those subjects should await a case presenting the arguments.

¶51. In addition, it is my view that the Court's reliance on, and adoption of, the views set forth in Justice Trieweiler's special concurring opinion in <u>Cameron</u> is entirely inappropriate here. The traditional use of special concurrences and dissents--which do not reflect the Court's opinion on the legal issues of the case--is by parties in future cases to urge a different dispositive analysis of the case from that in currently controlling precedent. Such a use is entirely proper. It is quite another thing, in my view, for the Court itself to simply bootstrap itself into new controlling precedent by using concurring or dissenting views from previous cases which have not been advanced by any party. The short-term effect of such an approach is to cut both the

litigating parties and the district courts out of the case entirely. The long-term consequence, I fear, is that the Court will become an internal debating society which will seize on concurring or dissenting opinions which did not garner the votes of the majority of the Court when written, and use them to create new law whenever it desires to do so, even in the absence of any request by a party--in either the trial court or this Court. This strikes me as an unwise approach in the present case, and a dangerous precedent for future cases.

¶52. Moreover, to the extent the Court shares the concerns and philosophy expressed in the Cameron concurrence, I agree that it should say so; indeed, I would join in such a statement. The Court should then be willing, however, as Justice Trieweiler was in Cameron, to exercise judicial restraint and await a case raising the impropriety of the Lyndes involuntary action rule, rather than being willing to reverse a district court on an issue never raised. Deference to the parties and the arguments raised, to the District Court, and to the importance of *stare decisis* in maintaining stability and consistency in the law require no less.

¶53. Finally, with regard to the Court's approach to the present case, I strenuously disagree with the Court's suggestion that our *de novo* summary judgment review somehow authorizes this Court to change the very nature of a case on appeal in order to "clarify" a confusing area of the law or for any other purpose. *De novo* review does not--and must not--provide this Court with inherent authority to change the basis on which a summary judgment issue was raised and supported by evidence in the trial court and, having changed the entire basis of the summary judgment issue, to reverse a trial court on a theory never presented there or here.

¶54. Nor does the Court explain how such a new view of the scope of our *de novo* summary judgment review will work in the future. Will we continue to apply to the litigating parties our long-established rule that an issue not raised in the trial court cannot be raised on appeal, while taking it upon ourselves to raise and resolve any issue we might see in the case and think should have been raised? Notwithstanding that we are, in fact, the Court, how can we justify such a position to either litigating parties or district courts? And where will it end? Will we research areas of the law in which we do not like--or find confusing--existing precedent, wait for a case presenting the subject matter generally, and then see if we can "sell" each other on a new approach, without caring that the parties are not part of that process? The upshot of such an approach, I suggest, is the issuance of opinions by the Court on

matters and in cases which are not, in fact, before us in any proper sense of the phrase. Suffice it to say that I find the Court's newly created authority disturbing.

¶55. Not to belabor the point, but in summary, the Court has clarified three entire areas of the law--and overruled Lyndes to do so--without the benefit of any briefing from any party. Indeed, it has done so, in the present case, by ignoring Craig's arguments, the basis for the District Court's ruling and, ultimately, the jury's verdict. I cannot agree.

¶56. As stated above, the issue before us is whether the District Court erred in denying Craig's motion for summary judgment on liability by determining that genuine issues of material fact existed regarding Moseman's negligence which required resolution by a jury. It is my view that the following analysis, which addresses the arguments actually raised by Craig and decided by the District Court, establishes that the District Court did not err in denying her motion for summary judgment.

¶57. Craig's first argument is that the evidence she provided in support of her motion establishes that the presence of Moseman's vehicle in her lane of travel, in violation of § 61-8-321, MCA, resulted from his voluntary act of overcorrecting his vehicle when it went off the side of the road, causing the vehicle to skid to the left. She contends that, because she established the absence of genuine issues of material fact that Moseman's alleged act of overcorrecting was voluntary, his violation of § 61-8-321, MCA, was negligence as a matter of law and the Lyndes involuntary action rule is inapplicable.

¶58. With regard to her contention that she established Moseman's voluntary violation of the statute, Craig relies primarily on the deposition of Highway Patrol Officer Kelly Mantooth (Mantooth), who responded to--and subsequently investigated--the accident. She contends that Mantooth's deposition testimony establishes that, when Moseman realized his vehicle was veering off the right side of the road, he turned his steering wheel too hard to the left, thereby overcorrecting and sending the vehicle into an uncontrollable broadside skid into her lane of traffic. Craig further contends that Mantooth's deposition testimony establishes that Moseman's action of overcorrecting was a voluntary act. The portions of Mantooth's deposition on which Craig relies do not support her contention, however. Mantooth stated, in response to various hypothetical scenarios presented by Craig's attorney,

that the referenced scenario was a possible explanation of how the accident occurred. He further testified, however, that a number of other possible explanations existed for what happened and he could not say with any certainty which explanation was correct. Therefore, Mantooth's deposition testimony does not establish the absence of genuine issues of material fact regarding whether Moseman's abrupt left turn and skid into Craig's traffic lane was a voluntary act.

¶59. Nor does the other evidence Craig presented in support of her motion for summary judgment establish that Moseman's actions were voluntary. Craig's deposition testimony was that the events of the accident occurred so quickly that she either did not see or does not remember precisely what happened. She testified that she saw the deer in the road and the next thing she knew was that Moseman's vehicle collided with her vehicle. She had no recollection of how Moseman's vehicle ended up in her lane and no personal knowledge of the voluntariness of any of Moseman's actions.

¶60. Craig also relied on the reports of her accident reconstruction expert, Harry Townes (Townes), and Schell's accident reconstruction expert, John Jurist (Jurist). Townes' report indicates that Moseman's vehicle went into a broadside skid across the road into Craig's traffic lane, but does not address what might have caused the skid or whether Moseman did so by voluntarily overcorrecting his vehicle. Jurist's report, while concluding that Moseman drove off the right side of the highway and then overcorrected his vehicle in an attempt to return to the road, states that such a maneuver probably was instinctive and that, at that point, Moseman had lost control of his vehicle. Neither of the reports establishes that the presence of Moseman's vehicle in Craig's traffic lane was the result of a voluntary action on Moseman's part.

¶61. I would conclude that Craig failed to meet her initial burden on summary judgment of establishing the absence of genuine issues of material fact regarding Moseman voluntarily overcorrecting his vehicle, thereby causing it to skid into her lane of traffic. On that basis, I would hold that the District Court correctly determined that Craig was not entitled to summary judgment on the issue of liability.

¶62. Craig also argues that the District Court misapplied the relevant case law in concluding that there were factual issues regarding whether Moseman acted as a reasonable and prudent driver under the circumstances. She relies on Kudrna for the proposition that all drivers have a duty to anticipate and be prepared for the

sudden appearance of obstacles in the highway, and argues thereunder that encountering a deer on the highway is not an emergency as a matter of law. In my view, Craig misreads <u>Kudrna</u>.

¶63. There, an accident occurred when the driver of a truck owned by the Comet Corporation (Comet), belatedly realizing that a truck in front of him was stalled in the traffic lane, pulled into the oncoming traffic lane to pass the stalled truck in an attempt to avoid colliding with it. As the Comet truck was moving back into its lane of travel, an oncoming van struck the rear of the truck's trailer, resulting in the death of two of the van's occupants. A wrongful death and survivorship action was brought against both truck drivers and their employers. The jury returned a defense verdict and the plaintiffs appealed. <u>Kudrna</u>, 175 Mont. at 33-34, 572 P.2d at 185-86.

¶64. The plaintiffs argued that the district court should have directed verdicts of liability against Comet and its driver because the driver's passing of the stalled truck violated several motor vehicle statutes and constituted negligence as a matter of law. Comet responded that the sudden emergency created by the presence of the stalled truck on the highway excused any statutory violations by its driver. <u>Kudrna</u>, 175 Mont. at 37-38, 572 P.2d at 188. We concluded that the sudden emergency doctrine did not apply because the emergency with which the Comet driver was faced resulted from his own failure to timely see that which was in plain sight--a stalled truck ahead of him on the highway--and that the stalled truck did not suddenly appear in front of the Comet truck. <u>Kudrna</u>, 175 Mont. at 41, 572 P.2d at 189-90. On that basis, and in light of the other evidence presented at trial, we held that Comet and its driver were negligent as a matter of law and that the district court should have granted directed verdicts against them. <u>Kudrna</u>, 175 Mont. at 47, 572 P.2d at 193.

¶65. We emphasized in <u>Kudrna</u> that the sudden emergency doctrine rarely should be applied in ordinary automobile accident negligence cases. Specifically, we observed that the doctrine is qualified by the requirement that people anticipate and be prepared for some emergencies when engaged in an activity where emergencies are likely to arise, and that any driver " 'must be prepared for the sudden appearance of obstacles in the highway. . . .' " <u>Kudrna</u>, 175 Mont. at 43, 572 P.2d at 191 (quoting Erickson v. Perrett (1976), 169 Mont. 167, 174, 545 P.2d 1074, 1079). We did not conclude, as Craig appears to assert, that there are no circumstances in which the sudden appearance of an obstacle in the roadway could render reasonable a driver's subsequent actions in attempting to avoid the obstacle.

¶66. Moreover, we addressed the application of the sudden emergency doctrine again in <u>Eslinger</u>. There, we reiterated the <u>Kudrna</u> principle that the doctrine should not be used in ordinary automobile accident cases and quoted that portion of <u>Kudrna</u> which emphasized that some emergencies must be anticipated and drivers must be prepared for the sudden appearance of obstacles on the highway. <u>Eslinger</u>, 195 Mont. at 299-300, 636 P.2d at 258. We also clarified, however, that a sudden emergency situation is encompassed within the general standard of conduct to be applied in any negligence action--that of a reasonable person under the circumstances as they would appear to one using proper care; the emergency is merely one of the circumstances to be considered. <u>Eslinger</u>, 195 Mont. at 302, 636 P.2d at 260.

¶67. Thus, while Craig correctly asserts that drivers generally must be prepared for the sudden appearance of obstacles in the highway, the question of whether a driver faced with the sudden appearance of such an obstacle reacted appropriately under the circumstances still must be analyzed in terms of the reasonable person negligence standard. As a result, the question in the present case--as the District Court recognized--was whether Moseman acted reasonably under all the circumstances when faced with the sudden appearance of a deer on the road in front of his vehicle. This was clearly a factual question to be answered by the jury.

¶68. I would conclude that the question of whether Moseman acted in a reasonable and prudent manner was properly left to the jury. Thus, on that basis, as well as the <u>Lyndes</u> rule basis, I would affirm the District Court's denial of Craig's motion for summary judgment on the issue of liability. I dissent from the Court's failure to do so.

¶69. Finally, because I would affirm the District Court's denial of Craig's summary judgment motion, I would fully address the issue of whether the District Court abused its discretion in granting Craig a new trial on the basis of improper comment by defense counsel in closing arguments. On that issue, I would conclude that defense counsel made three improper comments in closing arguments which prejudiced Craig's right to a fair trial. As a result, I would affirm the District Court's grant of a new trial on all issues.

/S/ KARLA M. GRAY

No